UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A.,<br><br>     *Plaintiff*,<br><br>  v.<br><br>HPS INVESTMENT PARTNERS, LLC AND SYMPHONY ASSET MANAGEMENT, LLC,<br><br>     *Defendants*. | 1:20-cv-06617-JMF<br><br>**COMPLAINT** |

Plaintiff Citibank, N. A. ("Citibank"), by and through its attorneys, respectfully submits this complaint against defendants HPS Investment Partners ("HPS"), LLC and Symphony Asset Management, LLC ("Symphony").

**PRELIMINARY STATEMENT**

1. On August 11, 2020, an operational mistake caused Citibank to transfer approximately $900 million of its own money to parties that were not entitled to it. When Citibank discovered the mistake, it promptly asked the recipients to return its money. Defendants, however, have unlawfully attempted to capitalize on the mistaken overpayment. They have refused to return Citibank's money. With respect to HPS, approximately $127,336,420.54 in funds mistakenly paid by Citibank are at issue. As for Symphony, approximately $109,673,303.62 in funds mistakenly paid by Citibank are at issue. Defendants' actions are not just unconscionable; they threaten the integrity of the administrative agency function and the trust in the global banking system.

2. Citibank's transfer was intended to pass through an interest payment from Revlon, on a loan for which Citibank acts as an administrative agent. Without justification, defendants have taken the baseless position that Citibank's overpayment—more than 100 times the amount of the intended transfer—served to pay off Revlon's entire principal balance as well: a balance that was

not due for another three years, that Revlon did not have available, and that today reportedly trades at 30 cents on the dollar.

3. There is little doubt that Citibank made the payment in error. Some of the best evidence is that not every lender who received an erroneous payment pocketed the money. Consistent with industry norms, numerous non-party lenders that received funds by mistake returned them in good faith and without significant comment or complaint.

4. Defendants here behaved differently, despite the clearly erroneous nature of the payments at issue. Among other things:

- the payments were accompanied by calculation statements that showed the correct (and substantially smaller) amount as the "Total Due";

- No payment matching the erroneous transfers was due under the Credit Agreement;

- Citibank promptly advised defendants of the error;

- Revlon has stated publicly that it did not make a principal payment on its debt and that none was due under the Credit Agreement.

5. Defendants have not offered a reasonable explanation for their unlawful retention of Citibank's money.

6. Defendants' refusal to return money to which they are not entitled is unlawful. Under equitable principles as well as the doctrine of conversion, this Court should require defendants to return Citibank's money immediately. Any other outcome would threaten the stability of the banking system and the relationships between administrative agents and lenders, as it would reward bad actors that try to capitalize on operational mistakes. The global economy depends on financial institutions being able to efficiently make enormous numbers of payments every day. While the vast majority of these payments are seamless, the velocity and complexity of such transactions means that human and technological errors do occur at times. The legal system

needs to treat these as what they obviously are—mistakes—rather than as opportunities for unscrupulous actors to seize massive windfalls.

7. A related proceeding pending before the Honorable Jesse Furman raises identical issues as this action. In that case, Citibank sued another fund manager, Brigade Capital Management, L.P., who is in a similar position as defendants HPS and Symphony. *See Citibank, N.A., v. Brigade Capital Management, L.P.,* 20-cv-06539 (JMF). On August 18, 2020 Judge Furman entered a Temporary Restraining Order against Brigade. Citibank will seek similar preliminary relief here.

## PARTIES

8. Citibank is a bank organized under the National Bank Act with its main office located in South Dakota.

9. Defendant HPS is a corporation organized under the laws of Delaware. It has its principal place of business in New York, New York.

10. Defendant Symphony is a corporation organized under the laws of California. It has its principal place of business in San Francisco, CA. Upon information and belief Symphony regularly conducts business in New York, New York. It has an office at 100 Park Avenue, New York, New York 10017.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

12. This Court has personal jurisdiction over defendants, all of which conduct substantial business in New York.

13. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

**Revlon's 2016 Loan**

14. In 2016, Revlon acquired Elizabeth Arden, Inc. The deal was partially facilitated by a seven-year, $1.8-billion loan. A "Credit Agreement," governs the loans. HPS and Symphony manage funds and other entities that are specific lenders under that agreement.

15. Citibank serves as the administrative agent and collateral agent for the loan. One of Citibank's many duties is to collect payments from Revlon to remit to the lenders under the Credit Agreement. Another is to maintain a register listing the amount of each loan and payment (the "Official Register"). The Official Register acts as the definitive record of amounts owed and received. Under the Credit Agreement, the Official Register is deemed "presumptively correct absent demonstrable error," and any error "shall not in any manner affect the obligation of [Revlon] to repay (with applicable interest) the Loans made to [Revlon] in accordance with the terms of th[e] Agreement." § 2.8(c)–(d). Fund Managers have previously, and misleadingly, referred to documents other than the Official Register as purporting to evidence amounts due (or paid) under the Credit Agreement. This is incorrect and the Official Record controls.

16. Revlon is responsible for making periodic interest payments under the Credit Agreement. The agreement also permits Revlon to pay principal ahead of schedule but only if certain requirements are met. Under Section 2.11(a) of the agreement, any prepayment by Revlon of principal on Eurocurrency loans, like those at issue here, must be preceded by a detailed written notice three business days in advance.

**The August 11 Transfer**

17. On August 11, 2020, several months of accrued interest came due under the Credit Agreement. The interest payment was to be processed by Citibank in its capacity as administrative agent. No other amount was due at the time, and Revlon transferred no additional funds to Citibank.

18. The interest payment was processed by Citibank on August 11, 2020. Due to issues with the loan-processing system, the payment to each lender was on average more than 100 times the interest that was actually due. All of the funds managed by HPS and Symphony received significant overpayments.

19. On August 11, Citibank undertook to make payments pursuant to the Credit Agreement.

20. That day, Citibank sent notices (the "Payment Notices") describing the intended payments for all of the funds HPS and Symphony manage.

21. The Payment Notices follow a standard format. The top portion identified the payment as a "***Libor Rate Interim Interest Payment.***" (Emphasis added.) The notices then provided that "[i]nterim interest is due as per the detailed calculation below." The calculations showed the principal of the loan held by each fund; the interest rate; the period of interest being paid; and the interest due. These notices expressly referenced the intended amount of the payment, which was far smaller than the actual payment. For example, the Payment Notice sent to Cardinal Fund LP, a fund managed by HPS stated:

| Interest Due Period : 29-MAY-2020 to 11-AUG-2020 | | | | | | |
|---|---|---|---|---|---|---|
| LIBOR Funded | Interest Rate | Day Basis | From Date | To Date | # of days | Interest Due |
| 3,240,577.88 | 4.25% | Actual/360 | 29-MAY-2020 | 11-AUG-2020 | 74 | 28,310.05 |

5

22. Beneath this was a row marked "Total Due," again stating the correct intended amount:

```
Credit Date      : 11-AUG-2020
Credit Currency  : USD
Total Due        : 28,310.05
```

23. The notices went on to state that "[w]e will credit your account representing the above Interim Interest." Fields captioned "Total Due" and "Credit Amount" yet again stated the intended payment amount. The above notice, for example, included the following section:

```
We will credit your account representing the above Interim Interest based on the
following instructions :

    Credit Date      : 11-AUG-2020

    Credit Currency  : USD

    Total Due        : 28,310.05

    Less :Tax Withholding  : 0.00

    Credit Amount    : 28,310.05
```

24. In short, this notice unambiguously explained that Citibank would be sending an interest payment of $28,310.05. But instead of sending the amount due, Citibank mistakenly sent $3,268,887.93—more than 100 times what it was due.

25. As a result of this sort of error, lenders received payments far greater than they were due under the Credit Agreement. Each of the Fund Manager defendants processed transactions worth hundreds of millions of dollars more than should have gone to the Term Lenders on August 11.

26. According to Citibank's calculations, HPS's Term Lenders currently have $$127,336,420.54 more than they are entitled to.

27. Similarly, according to Citibank's calculations, Symphony's Term Lenders' received $109,673,303.62. Of that amount, none has been returned.

28. The mistaken nature of the payment was obvious from the outset and clear on the face of the relevant documents. The Payment Notices were accompanied by "Payment Transaction" records that *did not match*. For example, here is the record corresponding to the Cardinal transaction described above:



29. It shows a total "credit amount" of $3,268,887.93. which is wildly different from the "total due" "credit amount" listed on the Payment Notice.

30. The type of error described above was repeated for each of the payments made to the lenders serviced by HPS and Symphony.

31. These overpayments were made with Citibank's own money. It is not the case that Citibank was transmitting Revlon's funds to the Term Lenders. Revlon did not provide such funds. The mistakenly distributed money belonged entirely to Citibank.

**Defendants' Conversion of Citibank's Funds**

32. Clearly, Citibank made a mistake. Citibank did not intend to transfer more money than stated in the Payment Notices, let alone with its own funds. That was obvious from the language of the notices. But beyond that, given the terms of the Credit Agreement, a prepayment could not have occurred under the circumstances here. The balance of the loan is not due for another three years, and a prepayment of any amount is only permitted with "irrevocable written notice" from Revlon three business days in advance. § 2.11(a). No prepayment notice was issued, because no prepayment was made. Nor was there a payoff letter, which is market standard practice when payment of the full outstanding balance of a loan is intended. Furthermore, no principal payment was funded by Revlon. And Citibank never modified the Official Register to reflect a full or partial discharge of principal in connection with the overpayment.

33. As creditors woke up to find thousands if not millions more than expected in their bank accounts, the overpayment was covered widely by news outlets around the world. The Wall Street Journal reported that "Citigroup Pays Revlon Lenders Nearly $900 Million by Mistake." Bloomberg and Reuters made similar reports. Revlon, for its part, publicly stated that "Revlon did not pay down the loan or any part of the loan." And all of the articles made clear that the payment was mistaken.

34. On both August 12 and August 13, 2020, Citibank sent notices asking for the funds to be returned, less the correct amount of interim interest reflected by the credit amount in the payment notices. Here is a notice—entitled ***Recall of Funds*** Revlon TL2016—addressed to Cardinal Fund LP (a HPS Term Lender) at approximately 6:16 pm on August 12, 2020:

> Date: 12-Aug-2020
>
> To: CARDINAL FUND LP
>
> Attn: 12145041027@TLS.LDSPROD.COM
>
> FROM: Citibank N.A
>
> Subject: REVLON TERM LOAN 2016
>
> Please be advised that on August 11th 2020 regarding "REVLON TERM LOAN 2016 – Global Amount 893,944,008.52", we have paid Interest accrual from May 29th to August 11th. An additional amount was included in your interest payment in error and you were overpaid. Please return the amount listed below as soon as possible.
>
> Amount Paid in Error: $3,240,577.88

35. This notice specifically stated that funds had been paid "*in error.*"

36. When HPS did not return the funds in response to the notice shown above, Citibank sent a second polite request to have its money returned. This one was sent at approximately 1:11 pm on August 13, 2020:

> Date: 12-Aug-2020
>
> To: CARDINAL FUND LP
>
> Attn: 12145041027@TLS.LDSPROD.COM
>
> FROM: Citibank N.A
>
> Subject: REVLON TERM LOAN 2016
>
> Please be advised that on August 11th 2020 regarding "REVLON TERM LOAN 2016 – Global Amount 893,944,008.52", we have paid Interest accrual from May 29th to August 11th. An additional amount was included in your interest payment in error and you were overpaid. Please return the amount listed below as soon as possible.
>
> Amount Paid in Error: $3,240,577.88

37. Again, Citibank's notice identified an "error" and requested repayment. But, the funds have not been returned.

38. Citibank sent substantively equivalent notices concerning every mistaken payment. And it specifically raised the issue of error with the defendants and sought their help.

9

39.     In addition to the notices described above (which went to defendants) Citibank also specifically contacted the Fund Managers and sought their assistance in obtaining the return of mistakenly paid funds.

40.     For example, at approximately 1:07 pm on August 13, 2020 a representative of Citibank's loan operations department emailed a contact at HPS. He wrote:

> As per our conversation, below is the list of outstanding amounts paid to different lenders and the fund manager is HPS. The total is 133,580,578.83/USD. These were paid on August 11th and are a part of the Revlon Term Loan 2016. We paid Interest accrual from May 29th to August 11th. An additional amount was included in the interest payment in error and there was an overpayment.
>
> Appreciate if you could assist in getting the funds back asap.

41.     A similar email was sent to defendant Symphony:

> I am reaching to you in regards to funds paid in error to Symphony Asset Management. These were part of the Revlon Term Loan 2016. Additional amount was included in the interest payment and the lenders were paid in error. I have been trying to reach out to Symphony since this morning without luck. I was hoping that you could provide us with a contact who can help us in getting the funds back.

42.     Despite these and other urgent inquiries from Citibank to HPS and to Symphony, neither took action to return erroneously transmitted funds to Citibank.

43.     Also on August 12, several other lenders—including, upon information and belief, HPS and Symphony—took three actions that showed that they, like everyone else, understood that the payments made on August 11 had been made with incorrect amounts.

44.     First, they purported to serve Revlon with a notice of an Event of Default under the 2016 loan. There would have been no reason to serve a notice of an Event of Default if the loan had just been paid in full.

45.     Second, acting through UMB Bank, which claims to have been appointed successor administrative agent, they purported to accelerate the loan's principal. That acceleration notice was a clear admission that the lenders did not believe that the principal was repaid (or intended to be repaid) on August 11; if it had been, there would have been nothing to accelerate.

46. Third, UMB Bank, again claiming to be the administrative agent, filed a 117-page complaint accusing Revlon of improperly amending the Credit Agreement to avoid paying the 2016 lenders. *See* Complaint, *UMB Bank v. Revlon*, No. 20-cv-06352, Dkt. 1 (S.D.N.Y. Aug. 12, 2020). The complaint reconfirmed that the lenders were under no illusion that the loan had been fully repaid on August 11. Further, it alleged that Revlon was unable to repay the loan, because it was "insolvent and facing a severe liquidity crisis."

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unjust Enrichment
### (Both Defendants)

47. Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

48. Defendants were enriched at the direct expense of Citibank, by mistakenly receiving millions of dollars of Citibank's money to which they were not entitled.

49. Equity and good conscience militate against permitting defendants to retain the misappropriated funds.

### SECOND CAUSE OF ACTION
### Conversion
### (Both Defendants)

50. Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

51. Defendants have and are continuing to exercise unauthorized dominion over specifically identifiable assets of Citibank. For each defendant Citibank can identify—precisely— the amount of money mistakenly transferred on August 11, 2020.

52. Despite Citibank's demands that defendants return the assets in question, defendants have refused to do so.

### THIRD CAUSE OF ACTION
### Money Had and Received
### (HPS)

53.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

54.     On August 11, 2020, HPS mistakenly received $133,580,578.83 belonging to Citibank, and to which HPS had no claim.

55.     HPS benefitted, and continues to benefit, from the receipt of Citibank's money.

56.     Under principles of equity and good conscience, HPS should not be permitted to keep Citibank's money.

### FOURTH CAUSE OF ACTION
### Payment by Mistake
### (HPS)

57.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

58.     On August 11, 2020, Citibank mistakenly sent payments to HPS. The payments were intended to transfer the interim interest owed by Revlon to HPS. Instead, Citibank transferred an amount more than 100 times greater than the interest owed by Revlon, with the excess coming from Citibank's own funds.

59.     HPS derived a benefit as a result of the mistaken payments.

60.     Equity demands restitution by HPS to Citibank.

### FIFTH CAUSE OF ACTION
### Money Had and Received
### (Symphony)

61.     Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

62.     On August 11, 2020, Symphony mistakenly received $109,673,303.62 belonging to Citibank, and to which Symphony had no claim.

63. Symphony benefitted, and continues to benefit, from the receipt of Citibank's money.

64. Under principles of equity and good conscience, Symphony should not be permitted to keep Citibank's money.

### Sixth CAUSE OF ACTION
### Payment by Mistake
### (Symphony)

65. Citibank repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

66. On August 11, 2020, Citibank mistakenly sent payments to Symphony. The payments were intended to transfer the interim interest owed by Revlon to Symphony. Instead, Citibank transferred an amount more than 100 times greater than the interest owed by Revlon, with the excess coming from Citibank's own funds.

67. Symphony derived a benefit as a result of the mistaken payments.

68. Equity demands restitution by Symphony to Citibank.

### PRAYER FOR RELIEF

**WHEREFORE**, Citibank respectfully requests that this Court enter judgment in favor of Citibank and against HPS and Symphony:

a. Ordering HPS and Symphony to immediately return the misappropriated funds or, in the alternative, freeze the overpayment received from Citibank and refrain from transferring or distributing those funds;

b. Declaring that Citibank is rightfully entitled to the misappropriated funds;

c. Ordering HPS to return to Citibank the funds misappropriated by HPS, totaling $127,336,420.54;

d. Ordering HPS to pay Citibank interest on the funds misappropriated by HPS for the duration that they remain with HPS;

e. Ordering HPS to pay damages reflecting its misconduct to Citibank;

f. Ordering Symphony to return to Citibank the funds misappropriated by Symphony, totaling $109,673,303.62;

g. Ordering Symphony to pay Citibank interest on the funds misappropriated by Symphony for the duration that they remain with Symphony;

h. Ordering Symphony to pay damages reflecting its misconduct to Citibank;

i. Awarding reasonable costs and expenses incurred in this action, including attorneys' fees;

j. Awarding pre-judgment interest on all such damages, monetary or otherwise; and

k. Awarding further relief as the Court may deem just and proper.

Dated: August 18, 2020
New York, New York

THE LAW OFFICES OF JOHN F. BAUGHMAN, PLLC

By: _____
Nathaniel E. Marmon
John F. Baughman
Nathaniel E. Marmon
299 Broadway, Suite 207
New York, New York 10007
(347) 241-6347

*Attorneys for Plaintiff Citibank, N.A.*

14